Luongo Unemployment Compensation Case.

Argued March 4, 1963. Before RHODES, P. J., ER-VIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Richard S. Campagna,* for appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Raymond Kleiman,* Deputy Attorney General, and *Walter E. Alessandroni,* Attorney General, for Unemployment Compensation Board of Review, appellee.

OPINION BY WOODSIDE, J., April 18, 1963:

This unemployment compensation case is complicated by the fact that the claimant, Frank Luongo, had multiple covered employment. He had been employed by S. J. Aronsohn, Inc., for approximately two years, working as a quill cleaner in his employer's textile mill from 11:15 P.M. to 6:15 A.M., five days a week at an hourly wage of $1.21. In June of 1961, the claimant obtained day-time employment with his uncle, Lorenzo Grecco, as a construction laborer at $1.50 per hour. From June to November 7, 1961, the claimant held both jobs. On the latter date, he voluntarily quit his employment with Aronsohn. On December 1, 1961, he was laid off by Grecco because of lack of work.

The bureau, the referee and the board held that the claimant was ineligible for compensation. The basis of their conclusion was that the claimant, by voluntarily terminating his employment with Aronsohn was disqualified from benefits under §402(b)(1) of the Unemployment Compensation Law, 43 P.S. §802(b)(1), and subsequent to that voluntary termination he did not meet the qualifying provision of §401(f) of the Unemployment Compensation Law, 43 P.S. §801(f), by earning eight times his weekly benefit rate.

Section 401(f) of the Unemployment Compensation Law, 43 P.S. §801(f), provides: "Compensation shall be payable to any employe who is or becomes unemployed, and who— . . . (f) Has, subsequent to his separation from work under circumstances which are disqualifying under the provisions of subsections 402(b) and 402(e) of this act, been paid remuneration for services in an amount equal to or in excess of eight (8) times his weekly benefit rate, . . ."

In determining whether the claimant had earned eight times his weekly benefit rate under the above provision, the board considered only those wages which the claimant earned from Grecco subsequent to his voluntary termination of work with Aronsohn on November 7. During this time, the claimant earned only $141.75, which was insufficient to qualify him under the above provision.

It is the claimant's contention that in determining whether he had earned eight times his weekly benefit rate, all the wages which he earned from Grecco should be considered regardless of whether they were earned *prior* or *subsequent* to his voluntarily leaving his employment with Aronsohn. The difficulty with this contention is that it flies into the face of the above provision of the statute, which limits consideration to that remuneration paid "subsequent" to the disqualifying separation.

The usual situation which arises under this provision is one whereby the employe obtains a new job after leaving work in such a way as would disqualify him under either §402(b) or §402(e). Here the claimant had been working full time for two employers during the same period and thus continued in covered employment without interruption until discharged on December 1. There are, of course, many claimants who have had employment with two different employers at the same time. Their cases vary from those where the claimant has been employed full time in two jobs paying approximately the same wages, to those cases where the hours employed and the weekly wages received in one job is only a small fraction of the hours employed and the wages received in the other job held during the same period.

Although the Unemployment Compensation Law recognizes cases of employment in more than one job during the same period, there are provisions of the law which present some difficulty in their application to cases of multiple covered employment.

As this is the first case in the courts raising precisely the point before us, we are conscious that the principles applied here will be used by the unemployment compensation authorities in other cases of multiple covered employment. We shall not attempt to contemplate and decide the various problems that might arise out of such employment. We shall limit our determination to the rules governing this case.

The board was correct in holding that once an employe has a disqualifying separation, he cannot qualify under §401(f) unless "subsequent" to the date of the disqualifying separation, he has been paid remuneration for services in an amount equal to or in excess of eight times his weekly benefit. The claimant, therefore, could not use the remuneration earned from Grecco, or elsewhere, *prior* to that date in order to qualify under §401(f).

This conclusion assumes, of course, that the claimant's separation from the Aronsohn job was disqualifying. The board found that "The work the claimant did for S. J. Aronsohn Company was steady, full-time employment," while "the work the claimant did for his uncle was seasonal," and that "The claimant voluntarily terminated his employment with S. J. Aronsohn Company because he only wanted to work for his uncle in the construction trade." It decided that "Under these conditions . . . the claimant's termination from employment was without cause of a necessitous and compelling nature." Under §402(b)(1) of The Unemployment Compensation Law, 43 P.S. §802(b)(1) a claimant is disqualified when "his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature, . . ."

The claimant argues that when he voluntarily quit the Aronsohn job, he believed that he would have regular employment with his uncle and that he was facing a possible layoff by Aronsohn. He testified that continuing the two jobs had become too difficult and that he was justified in choosing to continue employment with his uncle. The board found, however, that the Aronsohn job was "steady" employment while the Grecco job was "seasonal". Furthermore, the "season" was ending when the claimant left his Aronsohn job. It did in fact end only three weeks later. Under these circumstances the board was justified in concluding that the claimant did not quit his Aronsohn job for a compelling and necessitous reason. *Buletza Unemployment Compensation Case*, 174 Pa. Superior Ct. 248, 101 A. 2d 447 (1953); *Hrebar Unemployment Compensation Case*, 179 Pa. Superior Ct. 103, 116 A. 2d 93 (1955); *Smith Unemployment Compensation Case*, 181 Pa. Superior Ct. 185, 124 A. 2d 707 (1956); *Blumberg Unemployment Compensation Case*, 191 Pa. Superior Ct. 479, 159 A. 2d 243 (1960). The facts are for the

board. Unemployment Compensation Law §510, 43 P.S. §830; *Ristis Unemployment Compensation Case,* 178 Pa. Superior Ct. 400, 403, 116 A. 2d 271 (1955); *Progress Mfg. Co., Inc. v. Unemployment Compensation Board of Review,* 406 Pa. 163, 176 A. 2d 632 (1962).

The board made no clear determination of the claimant's bad faith, and such finding may not be warranted in this case, although the idea seemed to be smouldering throughout the board's argument and decision. Basic to the awarding of unemployment compensation is the claimant's genuine desire to continue to work. The question of good faith is an important inquiry in multiple employment cases, for a claimant would be disqualified if he voluntarily quit one job with the *expectation* of qualifying for unemployment benefits by a subsequent involuntary separation from another job. Good faith, in this context, embraces not only the mere negative virtue of freedom from fraud, but conduct which is consistent with a genuine desire to work and to be self-supporting. *Hassey Unemployment Compensation Case,* 162 Pa. Superior Ct. 14, 17, 56 A. 2d 400 (1948); *Raiskin Unemployment Compensation Case,* 186 Pa. Superior Ct. 37, 40, 140 A. 2d 467 (1958); *Bradley Unemployment Compensation Case,* 198 Pa. Superior Ct. 356, 359, 181 A. 2d 894 (1962).

Section 401(a) of the Unemployment Compensation Law, 43 P.S. §801(a), provides that to qualify for unemployment compensation benefits a claimant must "within his base year, been paid wages for employment equal to not less than thirty (30) times his weekly benefit rate: . . ." The claimant met this requirement by employment with Aronsohn, but his separation from that employment was disqualifying. He was not paid sufficient wages by Grecco to qualify under this provision. Therefore, he must meet the requirements of §401(f), supra, before he is qualified for benefits. A different question would be presented had he quali-

fied for benefits under §401(a), supra, by earning from Grecco 30 times his weekly benefit rate within his base year before his separation from Grecco. In affirming the board in this case, we are not deciding that the claimant would be disqualified for benefits by §401(f) if his employment with Grecco had qualified him under §401(a), and there was no finding of bad faith.

Decision affirmed.