**James EARNEST, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,**
**Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 16, 2011.
Decided Nov. 3, 2011.

Charles B. Crane, Bloomsburg, for petitioner.

Jonathan D. Koltash, Assistant Counsel, Harrisburg, for respondent.

N. Randall Sees, Williamsport, for intervenor Muncy Homes, Inc.

BEFORE: COHN JUBELIRER, Judge, and LEAVITT, Judge, and BROBSON, Judge (P).

OPINION BY Judge LEAVITT.

James W. Earnest (Claimant) petitions for review of an adjudication of the Unemployment Compensation Board of Review (Board) that found him ineligible for benefits under the Unemployment Compensation Law (Law).[1] Claimant worked full-time for two employers and, in quick succession, lost both jobs. The Referee awarded benefits under Section 402(b) of the Law,[2] after finding Claimant left his first job for a necessitous and compelling reason. The Board found otherwise. The Board acknowledged that Claimant lost his second job through no fault of his own, but it found him ineligible under Section 401(f) of the Law,[3] because not enough time had passed between Claimant's resignation from the first job and his layoff from the second. Concluding that the Board erred in its application of Sections 401(f) and 402(b) of the Law, we reverse and remand.

The facts are not in dispute. Claimant began working full-time as a laborer for Muncy Homes, a modular home manufacturer, in 2002, usually working the first shift from 5:30 a.m. to 2:00 p.m. Layoffs were not uncommon at Muncy when business was slow. In June 2006, Claimant began working a second job in the evenings for Sears Roebuck & Co. doing store security work. By 2008, Claimant was working full-time for both employers.

On January 6, 2010, while working at Muncy, Claimant suffered a work injury to his hand that rendered him unable to do his pre-injury job. However, Claimant continued to work full-time at Sears while collecting workers' compensation disability from Muncy. Also in January, Claimant enrolled in classes at Lycoming College.

Claimant's physician cleared him to work on Monday, February 8, 2010, and Claimant reported for work at Muncy on that day. However, his supervisor informed him that the company was "closed down" that week and that no work was available.[4] Reproduced Record at 13a (R.R. ——). Further, his supervisor did not know when Muncy would resume normal operations. In the month of January, Muncy had been open for one three-day work week. Explaining to his supervisor that he was taking classes that were offered only once every few years, Claimant asked that when work became available, he be assigned to work no more than three days a week until the end of the semester. Muncy rejected the proposal.

After this discussion with his supervisor, Claimant quit his job at Muncy on February 9, 2010. Claimant explained in his

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §§ 751–914.

2. Section 402(b) provides, in relevant part, that an employee is ineligible for compensation when "his employment is due to voluntarily leaving work without cause of a necessitous and compelling nature[.]" 43 P.S. § 802(b).

3. The language of Section 401(f) of the Law, 43 P.S. § 801(f), appears in the text of the opinion, *infra.*

4. Before the Board, Muncy asserted that it must maintain a "full-time" roster of employees to meet its production demands. It explained that it informs employees on Friday if there will be work available the following week. The employees are eligible to receive unemployment compensation benefits for any week where work is not available. Certified Record, Item 11 (Employer's Petition for Appeal from Referee's Decision) (C.R., Item ——). These factual assertions were not established in the evidentiary record because Muncy did not appear at the hearing. They are, accordingly, irrelevant to our analysis.

testimony that he expected to support himself with his full-time job at Sears. However, Sears soon reduced Claimant's hours. Then, in early March, Sears eliminated Claimant's position entirely, effective March 13, 2010. On March 3, 2010, Claimant filed for unemployment as of February 9, 2010, the day after Muncy informed him that it had no available work.

The UC Service Center found that Claimant had voluntarily quit his job with Muncy without cause of a necessitous and compelling nature and was ineligible under Section 402(b) of the Law. Although Claimant's separation from Sears was not voluntary, the UC Service Center found Claimant ineligible by reason of Section 401(f), because he had not earned six times his weekly benefit rate at Sears after leaving Muncy. In the five weeks between leaving Muncy and being dismissed by Sears, Claimant had earned $2,012.50; six times his weekly benefit rate of $425 was $2,550. Claimant appealed.

A hearing was held before a Referee at which only Claimant offered evidence. Muncy did not appear; Sears appeared but did not participate.

Claimant testified that Muncy had been open for production a total of three days in the month of January 2010 and that his supervisor advised him that no work was available when Claimant reported for work on February 8, 2010. Claimant testified that he informed his supervisor that he could work a three-day week, which was all Muncy had been operating. Claimant stated that the lack of work influenced his decision to quit.

Based upon Claimant's testimony, the Referee found that: (1) Muncy told Claimant that no work was available the week ending February 13, 2010; (2) Muncy had operated only a few days in the previous month; (3) Claimant did not know if, or when, there would be work available in the future; and (4) Claimant quit because work was unavailable. Accordingly, the Referee found that Claimant left Muncy for a necessitous and compelling reason and, thus, was eligible for unemployment compensation as of February 13, 2010. Accordingly, the fact that Claimant did not earn $2,550 at Sears after he left Muncy was irrelevant.

Muncy appealed to the Board. Noting that Claimant requested a schedule concession so he could complete his class, Muncy argued that it needed to maintain a roster of full-time employees who could work "on demand." C.R., Item 11 (Employer's Petition for Appeal from Referee's Decision). Muncy asserted that Claimant resigned without necessitous and compelling reason.

On appeal, the Board made its own findings of fact. In relevant part, the Board found that:

5. The claimant was released to return to work on February 8, 2010.

6. Muncy Homes informed the claimant that it did not have hours for him at that time.

7. Muncy Homes was only able to give the claimant a few hours per month. It did not know when it would be able to increase the amount of hours that it could give him.

8. *Due to the reduction in hours and the fact that he had another fulltime job,* the claimant decided to quit his job and return to school.

Board Adjudication, Findings of Fact 5–8, R.R. 27a–28a (emphasis added). Based upon these factual findings, the Board reversed the Referee and denied Claimant benefits.

The Board held that Claimant was ineligible for unemployment compensation. First, it reasoned that because leaving a job to attend school is not a necessitous and compelling reason, Claimant was ineli-

gible under Section 402(b) of the Law. Second, because Claimant had not earned six times his weekly benefit rate at Sears after leaving Muncy, he did not "purge" his ineligibility for benefits caused by his voluntary quit. This rendered him ineligible under Section 401(f) of the Law. Claimant now petitions for this Court's review.

On appeal,[5] Claimant raises two issues, which we have reordered for purposes of our review. First, Claimant contends that the Board erred in denying benefits under Section 401(f). Claimant argues that he should not be penalized for leaving one of two jobs, not knowing the second job would soon be eliminated. Second, Claimant argues the Board erred in determining that he was ineligible for benefits under Section 402(b). He asserts that he left his job with Muncy because work was not immediately available when he reported for work on February 8, 2010.

We first address Claimant's argument that the Board erred in finding him ineligible for benefits because he did not earn sufficient wages at Sears after leaving Muncy. He contends that Section 401(f) was not intended to apply in circumstances where the claimant worked two jobs simultaneously. Rather, it is to apply where an employee leaves one job under disqualifying circumstances and thereafter works a second job for a short time. In support, Claimant directs us to this Court's holding in *Stauffer v. Unemployment Compensation Board of Review*, 49 Pa.Cmwlth. 284, 410 A.2d 972, 973 (1980). In response, the Board argues that *Stauffer* was wrongly decided. It urges the Court to follow the Superior Court's hold-

ing in *Luongo v. Unemployment Compensation Board of Review*, 200 Pa.Super. 562, 190 A.2d 344 (1963).

We begin with a review of the scope and meaning of Section 401(f) of the Law. It states as follows:

> Compensation shall be payable to any employe who is or becomes unemployed, and who—
>
> ❧ ❧ ❧
>
> (f) Has earned, *subsequent to his separation from work under circumstances which are disqualifying* under the provisions of subsections 402(b), 402(e), 402(e.1) and 402(h) of this act, remuneration for services in an amount equal to or in excess of six (6) times his weekly benefit rate irrespective of whether or not such services were in "employment" as defined in this act. The provisions of this subsection shall not apply to a suspension of work by an individual pursuant to a leave of absence granted by his last employer, provided such individual has made a reasonable effort to return to work with such employer upon the expiration of his leave of absence.

43 P.S. § 801(f) (emphasis added). The Board held that Claimant's separation from Muncy occurred under "circumstances which are disqualifying" and, thus, Section 401(f) applied to Claimant. The Referee held the opposite.

Pennsylvania's Unemployment Compensation Law was enacted in order to assist people who become unemployed

---

5. Our review is limited to determining whether constitutional rights were violated, whether errors of law were committed, and whether findings of fact are supported by substantial evidence. *Beddis v. Unemployment Compensation Board of Review*, 6 A.3d 1053, 1055 n. 2 (Pa.Cmwlth.2010). We are to review the case in the light most favorable to the party who prevailed before the Board, drawing all logical and reasonable inferences from the testimony in order to determine if substantial evidence exists. *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 355, 378 A.2d 829, 831 (1977).

through no fault of their own. Section 3 of the Law, 43 P.S. § 752.[6] Unemployment benefits are funded by employer and employee contributions. *See* Article III of the Law, 43 P.S. §§ 781–795. An employee does not become eligible for compensation after one day on the job. To be eligible, an employee must have earned no less than $50 for at least 16 weeks during the five calendar quarters preceding the first day of the claimant's unemployment. Sections 401(a) and 404(c) of the Law, 43 P.S. §§ 801(a) and 804(c). The higher an employee's wage and the more credit weeks of employment, the higher the amount of the employee's unemployment benefit. On the other hand, an employee who quits without a necessitous or compelling reason is not eligible for benefits, no matter how many credit weeks he has accumulated in the five quarters before he quit. Section 402(b) of the Law, 43 P.S. § 802(b).

An employee who quits a job is not forever barred from unemployment. That individual may seek other gainful employment but then be laid off from that new job—this time through no fault of his own. If he has been employed at the second job for a short time, he might not have enough credit weeks to qualify. However, Section 401(f) creates a way for a claimant to use credit weeks while employed by the first employer. Section 401(f) provides that if the employee has earned at least six times his weekly benefit rate at the second job, he "purges" his ineligibility. Further, his earnings and weeks of employment with both employers can be used to calculate his benefit award.

An example illustrates how Section 401(f) works. Night Watchman employed by the Acme Company for four years is dismissed after falling asleep on the job in violation of a work rule. By reason of this willful misconduct, erstwhile Night Watchman is not eligible for unemployment. However, one week later, he finds employment as a short order cook at a restaurant. Two months later, the restaurant burns down, and he loses his job through no fault of his own. At the restaurant, he earned $3,000 total, which was six times his average benefit rate of $500. By reason of Section 401(f), Night Watchman/Short Order Cook has "purged" his ineligibility caused by his dismissal from Acme. Now his credit weeks at Acme and at the restaurant can be used to calculate his unemployment benefit necessitated by the restaurant's destruction.

Section 401(f) requires the second employment to last long enough to earn six times the claimant's benefit rate. It is an artificial requirement designed, one supposes, to show that the employee has shown a commitment to being a member of the workforce. In this way, Section 401(f) allows an employee to regain access to a fund that was, in part, created by his contributions made while working at both jobs.

The application of Section 401(f) becomes problematic in instances where a claimant has held two jobs concurrently. Generally, a claimant who works two jobs and loses both jobs through no fault of his own is entitled to an unemployment benefit calculated on the basis of both jobs. *See* Section 404 of the Law, 43 P.S. § 804,[7]

---

**6.** It states, in relevant part, as follows:

The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves

to be used *for the benefit of persons unemployed through no fault of their own.*
43 P.S. § 752 (emphasis added).

**7.** Section 404 defines "highest quarterly wages," an amount which is used when calculating benefits, as:

(b) The "highest quarterly wages" of an employe shall be *the total wages (comput-*

and Section 4 of the Law, 43 P.S. § 753.[8] The question is how to determine eligibility where the claimant voluntarily leaves one job and shortly thereafter, is laid off, without fault, from the second. The application of Section 401(f) to that situation has been considered by this Court in *Stauffer* and by the Superior Court in *Luongo*.

In *Luongo*, 190 A.2d 344, the claimant worked at a textile mill for two years and then took a second job as a construction laborer. The claimant had held both jobs simultaneously for approximately six months when he quit his job at the textile mill. One month later, he was laid off from the construction job due to a lack of work. The Superior Court found the claimant ineligible for benefits because he did not quit his job at the textile mill for necessitous and compelling reasons. Further, this disqualifying separation was not "purged" under Section 401(f) because he did not earn six times his benefit rate at the second job, prior to being laid off. *Id.* at 345–347.

In *Stauffer*, 410 A.2d 972, the claimant worked for the Stackpole Carbon Company for 46 years and concurrently for a second employer, Industrial Steel and Pipe Company, for 26 years. Days after voluntarily retiring from Stackpole, the claimant was laid off by Industrial. The claimant had not earned six times his weekly benefit rate before being laid off by Industrial. This Court concluded that Section 401(f) did not render him ineligible for benefits. We held that Section 401(f) was not intend-ed to apply to a claimant who maintained two jobs concurrently for a long, period of time and then voluntarily left one job, not knowing that he would soon be laid off from the second job. We held that Section 401(f) applies to a case where the claimant has held two successive jobs, not two concurrent jobs. It is in the successive employment situation that a claimant, fired from a prior job, must earn six times the benefit amount at his new job to qualify for unemployment.

The Board argues that in *Stauffer* this Court created a "long term," double-employment exception to Section 401(f), which it contends cannot be reconciled with the words chosen by the legislature. The Board urges that we follow the Superior Court's straightforward read of Section 401(f) expressed in *Luongo*. There, the claimant quit one job, which appeared to have been available year round, to work a second construction job, right before work at the construction job was set to slow down.[9]

First, we are not free to disregard *Stauffer*, which is binding precedent. *Luongo* predates *Stauffer*, and this Court declined to follow *Luongo*.

Second, *Stauffer* announced a logical construction of Section 401(f) by limiting its application to the circumstance where the claimant has held successive, not concurrent, jobs. It is not consonant with the purpose of the Law to deny benefits to the claimant who has lost a job through no fault of his own. The *Luongo* interpretation of Section 401(f) punishes, arbitrarily

---

ed to the nearest dollar) which were paid to such employe in that calendar quarter in which such total wages were highest during the base year.
43 P.S. § 804(b)(emphasis added).

8. Section 4(x) of the Law defines "wages" as "all remuneration, ... paid by an employer to an individual with respect to his employment." 43 P.S. § 753(x). While Section 4(x)

provides numerous exceptions to what will be considered "wages," no distinction is made to remuneration earned concurrently with multiple employers.

9. It appears that the claimant in *Luongo* left his job at the textile mill knowing that the construction job would also end. In this respect, *Luongo* differs factually from *Stauffer* and from this case.

and illogically, the person who works two jobs simultaneously.

The Board erred in failing to follow *Stauffer*. Section 401(f) did not bar Claimant from eligibility, regardless of whether Claimant's separation from Muncy was for necessitous and compelling reasons, because he held two jobs concurrently.

In any case, we agree with Claimant, and the Referee, that his separation from Muncy was for a necessitous and compelling reason. Claimant left Muncy due to the lack of available work. Accordingly, he was eligible for benefits under Section 402(b).

In support of this position, Claimant notes that the Board found Muncy did not have work for him when he returned from disability; was only able to offer him a few hours per month; and did not know in advance the amount of hours that would be available, or when they would be available. In Finding of Fact 8, the Board found that "the reduction in hours" caused Claimant to quit. Before this Court, the Board now argues that the reason for Claimant's separation from Muncy was his return to school and refusal to accommodate Muncy's on-call work schedule. Muncy argues that it had no duty to accommodate Claimant and that it is irrelevant that its work availability was uncertain. Before the Board, Muncy argued that it could not accommodate requests such as Claimant's because it needed employees to be available full-time on-demand, but this point lacks any support in the evidence. Muncy did not appear at the hearing.

Section 402(b) of the Law states, in relevant part, that "[a]n employe shall be ineligible for compensation for any week ... [in] which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature...." 43 P.S. § 802(b). Whether one has "cause of a necessitous and compelling nature" to terminate his employment is the ultimate conclusion drawn from the underlying factual findings and, as such, is subject to appellate review. *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 358, 378 A.2d 829, 832 (1977).

Necessitous and compelling cause can be found where the circumstances produce pressure, both real and substantial, that would compel a reasonable person under the same circumstances to act in the same manner. *Renda v. Unemployment Compensation Board of Review*, 837 A.2d 685, 691 (Pa.Cmwlth. 2003). An employee who voluntarily terminates his employment bears the burden of proving that his voluntary quit was the result of necessitous and compelling reasons. *Id.* at 692. An employer has no "burden of proof with respect to a claim for benefits under [Section] 402(b)." *Johnson v. Unemployment Compensation Board of Review*, 869 A.2d 1095, 1104 (Pa. Cmwlth.2005). Therefore, even if an employer does not put forth evidence regarding the availability of continuing work, a claimant is not automatically granted benefits. *Id.* at 1105.

Lack of work, perpetual layoffs and drastic reductions in hours constitute necessitous and compelling reasons to quit one's job. *See, e.g., Staub v. Unemployment Compensation Board of Review*, 673 A.2d 434, 437 (Pa.Cmwlth.1996). However, leaving employment in order to further one's education does not constitute necessitous and compelling cause. *Keisling v. Unemployment Compensation Board of Review*, 198 Pa.Super. 345, 181 A.2d 717, 718 (1962); *Kaminski v. Unemployment Compensation Board of Review*, 174 Pa.Super. 242, 101 A.2d 132 (1953). The Law was not intended to subsidize college students who are working their way through school. *Evans, Portnoy & Quinn v. Unemployment Compensation Board of Review*, 665 A.2d 548, 552 (Pa.Cmwlth. 1995).

Here, after his recovery from his work injury, Claimant reported to work at Muncy only to learn that no work was available. His supervisor did not know when work would be available. Board Adjudication, Findings of Fact 6–7, R.R. 27a–28a. Further, Claimant was advised that he had to be available "on demand;" could not make alternate plans for the time when work was unavailable; and could not expect any accommodation from Muncy for a flexible "on call" schedule for a short period of time.

Claimant, while fully attached to the job market through his employment at Sears, endeavored to fill the gaps in his day when no work was available at Muncy by taking college courses. Had Claimant wished to pursue his degree rather than return to work at Muncy he would not have attempted to return to Muncy's employ following his disability. However, Claimant did wish to continue working for Muncy, as evidenced by his attempt to return to work the week of February 8, 2010. Once again, Muncy did not have work for Claimant. This perpetual lack of work and, most recently, the reduction in available work to a few days per month and refusal to accommodate a reasonable scheduling request prompted Claimant's resignation from Muncy. This was a resignation for a necessitous and compelling reason and, thus, Claimant is not ineligible for benefits under Section 402(b) of the Law.

For these reasons, we reverse the order of the Board and remand for a calculation of benefits consistent with this opinion.

**ORDER**

AND NOW, this 3rd day of November, 2011, the order of the Unemployment Compensation Board of Review, dated August 6, 2010, in the above-captioned matter is hereby REVERSED, and the matter REMANDED for further proceedings in accordance with this opinion.

Jurisdiction relinquished.