**SOLAR INNOVATIONS, INC., Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 7, 2011.

Decided Jan. 5, 2012.

David R. Warner, Jr., Lebanon, for petitioner.

Maribeth Wilt–Seibert, Assistant Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and KELLEY, Senior Judge.[1]

OPINION BY Judge COHN JUBELIRER.

Solar Innovations, Inc., (Employer) petitions for review of the Order of the Unemployment Compensation Board of Review (Board), which reversed the Unemployment Compensation Referee's (Referee) determination that Matthew J. Brandt (Claimant) is ineligible to receive unemployment compensation (UC) benefits under Section 402(b) of the Unemployment Compensation Law (Law),[2] 43 P.S.

---

1. This case was decided before Senior Judge Kelley's retirement on December 31, 2011.

2. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, as amended.

§ 802(b), because he voluntarily quit his employment without cause of a necessitous and compelling nature.

Claimant voluntarily quit his full-time job as marketing coordinator for Employer to pursue a new opportunity with Core-Techs, a temporary staffing agency (Staffing Agency), that allowed him greater flexibility "to more effectively pursue [his] education." (R. Item 2, Employer Separation Information at 1, Resignation Letter from Claimant to Employer (October 26, 2010) at 1, Reproduced Record (R.R.) at la.) The Philadelphia UC Service Center granted benefits, (R. Item 3), and Employer appealed, (R. Item 4, R.R. at 2a). An evidentiary hearing was held before a Referee at which Claimant and Employer's two witnesses testified.

Claimant testified that his last day with Employer was Wednesday, November 10, 2010, he went away Thursday through Sunday, then started the new job with Staffing Agency on Monday, November 15, 2010, although he stated that the "actual first day I was earning money was the 18th." (Referee Hr'g Tr. at 2–3, R.R. at 16a–17a.) Claimant noted that he was not actually working on the 15th, but that he signed a contract on the 15th and that it took a few days for everything "to get put into the proper computer systems and get all of that squared away." (Referee Hr'g Tr. at 3, R.R. at 17a.) Claimant explained that he provided his resignation letter to Employer toward the end of October and he accepted a contract job with Staffing Agency prior to leaving Employer. (Referee Hr'g Tr. at 2, R.R. at 16a.) His Staffing Agency contract position ended on December 10, 2010. (Referee Hr'g Tr. at 3, R.R. at 17a.) Claimant noted that he did not have any work with Staffing Agency at the time of the Referee's hearing because "it was the contract individual who eliminated the position. [Staffing Agency]

is just kind of a staffing, they ... provide the pay whereas the, contract works as many contracts do with this." (Referee Hr'g Tr. at 4, R.R. at 18a.) Claimant additionally testified that he left Employer "to have more flexibility as I work at my school work" and that he was "looking for something that fits my needs." (Referee Hr'g Tr. at 4, R.R. at 18a.) Claimant further stated that he was a student in an online program, affirming that he previously indicated to Employer that he wanted to reduce his hours so that he could spend more time focusing on his schoolwork. (Referee Hr'g Tr. at 5, R.R. at 19a.) Claimant explained that he had expected the contract he accepted in November to last at least six months and that it was not meant to be just a 30–day contract. (Referee's Hr'g Tr. at 13–14, R.R. at 27a–28a.) Claimant testified that when he applied for the contract, he was told that it would be a long-term contract and that Staffing Agency had other employees within that team who had been there for six months or longer doing the same sort of work. (Referee's Hr'g Tr. at 13, R.R. at 27a.) Claimant again noted that he expected to be there at least six months, "looking at the other employees who had been on the team, they had been there six months at that point" and he "didn't see any reason to believe that the contract would have to end." (Referee Hr'g Tr. at 13, R.R. at 27a.) Claimant further testified that he had applied for numerous other contracts with Staffing Agency, but "it didn't work out." (Referee Hr'g Tr. at 12, R.R. at 26a.)

Melissa Metcalf, Employer's Human Resources Generalist, testified on behalf of Employer. Ms. Metcalf testified when Claimant provided his written resignation and indicated he was leaving to pursue his education. (Referee's Hr'g Tr. at 7, R.R. at 21a.) She reaffirmed Claimant's testimony that he had approached Employer to

reclassify his position, to reduce his hours to thirty hours per week, and permit him to work at home as much as possible to accommodate his schooling. (Referee's Hr'g Tr. at 7, R.R. at 21a.) Ms. Metcalf noted that Claimant's resignation letter was consistent with this. (Referee Hr'g Tr. at 7, R.R. at 21a.) Ms. Metcalf recounted that when Claimant resigned, he indicated that the sole reason he was leaving work was because he needed more time to focus on school. (Referee's Hr'g Tr. at 7–8, R.R. at 21a–22a.) Ms. Metcalf confirmed that Employer was not able to work out any independent contractor work with Claimant because Employer's workload required a full-time position. (Referee Hr'g Tr. at 8, R.R. at 22a.)

Elizabeth Neketin, Payroll Manager for Staffing Agency, testified that Claimant was a contractor with Staffing Agency from November 19–December 19, 2010. (Referee Hr'g Tr. at 9–10, R.R. at 23a–24a.) Ms. Neketin stated that Claimant was hired for a short-term, temporary job and that Staffing Agency classified Claimant as a "temp." (Referee Hr'g Tr. at 10, R.R. at 24a.) Ms. Neketin further testified that a short-term position usually lasted one month to six months, but "usually these contracts are very short-term." (Referee Hr'g Tr. at 11, R.R. at 25a.) Ms. Neketin explained that Claimant's contractor was very happy with him, he was given a good rating of five stars and, if they had additional work, they would re-hire Claimant. (Referee Hr'g Tr. at 11, R.R. at 25a.)

Following the hearing, the Referee issued a decision reversing the Service Center's determination and finding Claimant ineligible for UC benefits. The Referee pointed out that Claimant did not meet his burden to prove that he had cause of a necessitous and compelling nature for voluntarily terminating his employment. The Referee reasoned that when Claimant quit

his job with Employer on November 10, 2010 and began work on a contract with Staffing Agency on November 15, 2010, he voluntarily left work to take some time off and then pursued a temporary assignment.

Claimant appealed to the Board. Claimant argued that he believed his new Staffing Agency job was to last at least six months, was not temporary, and that another contract would follow. Claimant contended that Ms. Neketin's testimony was not credible and should not be given any weight. Claimant argued that he voluntarily left Employer to pursue work with Staffing Agency, which provided a firm offer of employment constituting a necessitous and compelling cause for termination of employment. (R. Item 11, Petition for Appeal from Referee's Decision at 2.)

Employer countered that Claimant quit his full-time, stable, non-temporary job in order to accept a temporary contract with Staffing Agency that was, in fact, exactly what he knew it to be—temporary—and Employer should not be punished for Claimant's poor judgment. (R. Item 12, Employer's Response in Opposition to Claimant's Appeal to Referee's Decision at 1–2.) Employer argued that although an employee who resigns from employment to accept a "firm offer" of employment elsewhere may be eligible for UC benefits when the second job proves to be unavailable, citing *Empire Intimates v. Unemployment Compensation Board of Review*, 655 A.2d 662 (Pa.Cmwlth.1995), this is not what occurred here. The second job did not become unavailable to Claimant; it simply ran the course expected of a temporary contract job with a finite period of employment.

The Board made its own findings of fact as follows:

1. [C]laimant was last employed as a marketing coordinator by [Employ-

er] from December 1, 2009, and his last day of work was November 10, 2010.

2. On November 15, 2010, [C]laimant began full-time employment with Staffing [Agency].

3. This full-time employment was temporary, between one and six months.

4. This assignment could be followed by another full-time assignment.

5. [C]laimant was then laid off for lack of work with Staffing [Agency].

6. [C]laimant then filed an application for unemployment compensation benefits.

(Board Decision at 1, Findings of Fact (FOF) ¶¶ 1–6.) Based on these findings, the Board determined that Claimant met his burden to show that he voluntarily left his employment for cause of a necessitous and compelling nature by showing that he quit his full-time job with Employer to accept full-time employment with Staffing Agency. The Board found Claimant's testimony to be credible and resolved conflicts in the testimony in Claimant's favor. (Board Decision at 2.)

■■■■ Employer filed a Request for Reconsideration with the Board, contending that Claimant specifically testified that he knew the position with Staffing Agency was temporary and of short duration at the time he accepted it, and that all positions with Staffing Agency were temporary. (R. Item 14, Request for Reconsideration at 1, R.R. at 40a–42a.) Employer further argued that it was only "Claimant's

belief" that his position would last at least six months and there was no documentation or testimony to support this belief. (R. Item 14, Request for Reconsideration at 2, R.R. at 41a.) Additionally, Claimant could not introduce any "offer letter" describing the structure of his position with Staffing Agency or any documentation of his further employment once his initial contract was completed. (R. Item 14, Request for Reconsideration at 2.) Employer further argued that finding of fact three directly contradicts Section 402(a.1) of the Law, 43 P.S. § 802(a.1),[3] providing that an employee shall be ineligible for benefits for any week "in which his unemployment is due to failure to accept an offer of suitable full-time work in order to pursue seasonal or part-time employment." (R. Item 14, Request for Reconsideration at 2, R.R. at 41a.) The Board denied the Request for Reconsideration. (R. Item 17, R.R. at 43a.) Employer now petitions this Court for review.[4]

Employer argues that the Board erred as a matter of law in finding that Claimant met his burden of proving that he voluntarily left his employment for cause of a necessitous and compelling nature when he made no effort to preserve his employment and left his full-time, stable, non-temporary position to accept a temporary contract with Staffing Agency. Employer contends that, pursuant to *Empire Intimates*, Claimant's decision to abandon his stable, secure employment in exchange for the temporary assignment was a personal decision in order to have more flexibility to pursue his education and was not a neces-

---

3. Added by Act of July 10, 1980, P.L. 521.

4. Our review is limited to determining whether the Board's adjudication is in violation of constitutional rights, whether an error of law was committed, or whether the factual findings are supported by substantial evidence. *Nolan v. Unemployment Compensation Board of Review*, 797 A.2d 1042, 1045 n. 4 (Pa.

Cmwlth.2002). Substantial evidence is that evidence which "a reasonable mind, without weighing the evidence or substituting its judgment for that of the fact finder, might accept as adequate to support the conclusion reached." *Centennial School District v. Department of Education*, 94 Pa.Cmwlth. 530, 503 A.2d 1090, 1093 n. 1 (1986).

sitous and compelling cause to quit. Employer additionally argues that choosing to pursue education rather than employment does not provide a necessitous and compelling cause to voluntarily leave one's secure employment, citing *Zook v. Unemployment Compensation Board of Review,* 200 Pa.Super. 414, 188 A.2d 783, 784 (1963).

The issue presented here appears to be one of first impression [5]—whether one can quit a stable, full-time, non-temporary job and accept a temporary job, yet remain eligible for UC benefits when the temporary job foreseeably ends, as it did in this case after approximately one month.

Here, the Board found that Claimant's employment with Staffing Agency was *"temporary, between one and six months."* (FOF ¶ 3 (emphasis added).) The Board additionally found that "[t]his assignment *could* be followed by another." (FOF ¶ 4 (emphasis added).) Therefore, we must address whether Claimant's unemployment that resulted from these circumstances was due to voluntarily leaving work without cause of a necessitous and compelling nature.

 Section 402(b) provides that a claimant shall be ineligible for benefits for a period "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." 43 P.S. § 802(b). A claimant who voluntarily terminates his employment has the burden of proving that a necessitous and compelling cause existed. *Petrill v. Unemployment Compensation Board of Review,* 883 A.2d 714, 716 (Pa.Cmwlth. 2005). It is now well-settled that an employee who claims to have left employment for a necessitous and compelling reason must prove that:

(1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a reasonable effort to preserve her employment.

*Brunswick Hotel & Conference Center, LLC v. Unemployment Compensation Board of Review,* 906 A.2d 657, 660 (Pa. Cmwlth.2006) (citing *Fitzgerald v. Unemployment Compensation Board of Review,* 714 A.2d 1126, 1129 (Pa.Cmwlth.1998)). "The employee seeking unemployment compensation benefits has the burden of proving the existence of a cause of a necessitous and compelling nature." *Township of North Huntingdon v. Unemployment Compensation Board of Review,* 69 Pa. Cmwlth. 187, 450 A.2d 768, 769 (1982). "Whether a claimant had cause of a necessitous and compelling nature to quit a job is a conclusion of law subject to review by this Court." *Warwick v. Unemployment Compensation Board of Review,* 700 A.2d 594, 596 (Pa.Cmwlth.1997). "It is well-established that . . . 'the receipt and acceptance of a firm offer of employment does constitute termination for cause of a necessitous and compelling nature.'" *Township of North ˙ Huntingdon,* 450 A.2d at 769 (quoting *Steinberg v. Unemployment Compensation Board of Review,* 34 Pa.Cmwlth. 294, 383 A.2d 1284, 1286 (1978)). "The offer of employment, however, must be definite," *Id.* at 769 (citing *Baron v. Unemployment Compensation Board of Review,* 34 Pa.Cmwlth. 379, 384 A.2d 271, 272 (1978)), *and* "the claimant must act prudently with regard to his employer." *Id.* (citing *Unemployment Compensation*

---

5. Employer notes that it was unable to locate any published appellate cases where a claimant left full-time permanent employment for a temporary staffing position, (Employer's Br. at 9), and our research has also not revealed any.

*Board of Review v. Pennsylvania Power and Light Co.*, 23 Pa.Cmwlth. 220, 351 A.2d 698, 699 (1976)). "[T]he mere possibility of obtaining another job is insufficient to establish that employment was terminated for good cause." *Id.* In addition, although "the claimant may have personal, economic, or career reasons for making h[is] decision to leave the employer ... that does not constitute a necessitous and compelling cause for voluntarily quitting." *Empire Intimates*, 655 A.2d at 665.

The Board maintains that Claimant met his burden to prove that he terminated his position for cause of a necessitous and compelling nature by accepting a firm offer of employment when he began working in the new job at Staffing Agency. The Board contends that it would have erred if it had gone further and considered Claimant's reasons for accepting the Staffing Agency job and the conditions of that employment. (Board's Br. at 7.) The Board cites *Brennan v. Unemployment Compensation Board of Review*, 95 Pa.Cmwlth. 114, 504 A.2d 432, 433 (1986) and *Antonoff v. Unemployment Compensation Board of Review*, 54 Pa.Cmwlth. 239, 420 A.2d 800, 801 (1980), for the principle that "[t]he receipt and acceptance of a firm offer of employment does constitute termination for cause of a necessitous and compelling nature."

In *Brennan*, the claimant was employed as a full-time L.P.N. in eastern Pennsylvania and, after purchasing a home with her husband in western Pennsylvania, forty-three miles southeast of Erie, she applied for and was offered a part-time L.P.N. position on June 4, 1984. *Brennan*, 504 A.2d at 432–33. After she terminated her employment with her former employer, the claimant's new employer informed her that her new job was no longer available due to low hospital occupancy. *Id.* at 433. The claimant applied for benefits, which were denied because the referee found that the claimant did not meet the Section 402(b) test since the claimant's new position was part-time and paid less than her former full-time job. *Id.* This Court, however, concluded that the relevant consideration was the reason for the quit, which in *Brennan* was the new job, and it was error to consider the *new job's lower pay and part-time status* as reasons to deny benefits. *Id.* In *Antonoff*, the claimant had been working as a teacher for nine years when she became employed as a salesperson and submitted her resignation to the school district by letter dated June 24, 1978, effective in sixty days. *Antonoff*, 420 A.2d at 801. Prior to the effective date of the claimant's resignation from her teaching job, the claimant learned that her new job was being terminated when that employer discontinued its operations on August 17, 1978. *Id.* The claimant did not inform the school district of the change and her employer indicated that, had she done so, she could have been reinstated. *Id.* The claimant applied for UC benefits and, ultimately, this Court concluded that the claimant did not meet her burden of proving it was necessitous and compelling to quit her teaching job since there was no longer an available job, she could have been reinstated to her former position, but she failed to request it. We, therefore, affirmed the denial of benefits. *Id.* at 801–02.

Having reviewed these cases, we conclude that both are distinguishable. *Brennan* is distinguishable because the change from full-time to part-time employment and the rate of pay are not issues raised in the case at bar. We, likewise, consider *Antonoff* inapplicable here because this is not a situation that involves a firm offer of employment that became unavailable prior to Claimant's resignation from Employer, which would have allowed Claimant to request reinstatement from Employer. Im-

portantly, we note that the unavailability of the new positions in both *Brennan* and *Antonoff* was unexpected. Here, the Board found that the contract position with Staffing Agency would last between one and six months. (FOF ¶ 3.) Moreover, neither *Brennan* nor *Antonoff* involved a claimant quitting non-temporary employment to take a new position *known to be temporary at the time of quitting.*

In *Empire Intimates,* 655 A.2d at 663, the claimant worked full-time for one employer and part-time at a beauty salon. *Id.* When a scheduling conflict arose between the two jobs, the claimant voluntarily quit her full-time position to work at the beauty salon. *Id.* Citing *Brennan,* this Court noted that a family relocation may provide good cause for quitting a full-time job and accepting a part-time position. *Id.* at 664. But importantly, we pointed out that *Brennan* "and other similar cases involve[d] an ultimate unavailability of the job offer which the claimant [had] accepted" and the unavailability was through no fault of claimant. *Id.* However, because the claimant's reduction in income in *Empire Intimates* was the result of her personal choice in which job to keep, we held that it did not constitute cause of a necessitous and compelling nature. *Id.* at 665.

■ Here, as in *Empire Intimates,* the ultimate unavailability of work for Claimant was the result of Claimant's personal choice. Instead of remaining at his full-time, non-temporary position with Employer, Claimant chose to accept a temporary job with Staffing Agency, which ended within the period of time the position was expected to end, sometime between one and six months. The offer and acceptance of a known temporary position is not akin to situations where a claimant is offered non-temporary, but part-time, work that subsequently becomes unexpectedly unavailable; rather, it is more like quitting a

full-time, non-temporary position in favor of a seasonal position of limited duration. The claimant in the former situation is eligible for benefits, *Brennan,* 504 A.2d at 433; the claimant in the latter situation is not. *Luongo v. Unemployment Compensation Board of Review,* 200 Pa.Super. 562, 190 A.2d 344, 346 (1963) (holding that quitting a full-time position to work a seasonal position did not constitute cause of a necessitous and compelling nature). We conclude that, under the circumstances here, an offer of full-time, but temporary employment does not constitute a firm offer of other employment that would provide an employee cause of a necessitous and compelling nature to voluntarily quit a non-temporary position. As we stated in *Empire Intimates,* "the claimant may have personal, economic, or career reasons for making h[is] decision to leave the employer; however, that does not constitute a necessitous and compelling cause for voluntarily quitting" a non-temporary job and accepting a job known in advance to be of only a one to six months duration. *Empire Intimates,* 655 A.2d at 665.

Further, we have held that the "mere possibility of obtaining another job is insufficient to constitute good cause for voluntarily terminating one's employment." *Pennsylvania Power and Light,* 351 A.2d at 699. In that case, the claimant was employed for four years at an electric station when he gave notice that he would be leaving to accept a more lucrative offer with an independent trucker. *Id.* at 699. The day before he accepted the new position, the claimant learned that the job had failed to materialize because no work was presently available for him. *Id.* Despite this lack of work, he left his employment as planned and filed for UC benefits. *Id.* Although we stated that a firm acceptance of other employment at a higher rate of pay was a more compelling reason for

terminating present employment than the indefinite possibility of obtaining another job, we also noted that leaving employment for higher pay was *"consistent with common sense and prudence," and that Claimant had a duty to pursue a prudent course of action. Id.* at 700 (emphasis added). Because the claimant did not provide any evidence that he acted prudently by rescinding his resignation or seeking reemployment with his former employer, we, therefore, concluded that he did not meet his burden of proof. *Id.*

■■■■ Here, as in *Pennsylvania Power and Light,* Claimant accepted the temporary position with Staffing Agency believing that, after the first position ended, there was a *possibility* of future assignments through Staffing Agency. (FOF ¶ 4.) The mere possibility that other assignments *could* become available "is insufficient to constitute good cause for voluntarily terminating one's employment." *Pennsylvania Power and Light,* 351 A.2d at 699. Moreover, we note that to establish eligibility for UC benefits pursuant to Section 402(b) of the Law, the claimant must show that he acted with ordinary common sense and made a reasonable effort to preserve his employment. *Brunswick Hotel & Conference Center,* 906 A.2d at 660. We discussed the imprudence of the claimant's actions in *Pennsylvania Power and Light* and we conclude that Claimant's actions here are similarly imprudent where he quit his regular, nontemporary job in exchange for a temporary job of fixed duration. Thus, as we did in *Pennsylvania Power and Light,* we

conclude that Claimant's actions do not "demonstrat[e] that [he acted] with ordinary common sense and prudence," *Id.* at 699, or that he made a reasonable effort to preserve his employment as required by Section 402(b) of the Law. *Brunswick Hotel & Conference Center,* 906 A.2d at 660. Accordingly, we hold that Claimant did not satisfy his burden of proving that he had cause of a necessitous and compelling nature to voluntarily quit his position with Employer and entitle him to UC benefits.[6]

Accordingly, we must reverse the Board's Order.

### ORDER

**NOW,** January 5, 2012, the Order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby **REVERSED.**

DISSENTING OPINION BY Judge PELLEGRINI.

The underlying issue in this case is whether Matthew J. Brandt (Claimant) is eligible to receive unemployment compensation benefits under Section 402(b) of the Unemployment Compensation Law[1] (Law) when he voluntarily quit his full-time employment with Solar Innovations, Inc. (Employer) and took a temporary job with Core Techs (Staffing Agency), a temporary staffing agency. The majority bases its decision on the fact that Claimant's job with Staffing Agency was only temporary in nature, stating, "an offer of full-time, but temporary employment does not constitute a firm offer of other employment that would provide an employee cause of a

---

**6.** Moreover, Claimant testified that he quit his job with Employer, at least in part, because he desired more flexibility for his schoolwork. (Referee Hr'g Tr. at 4, R.R. at 18a.) This is not a necessitous and compelling reason to quit under Section 402(b) of the Law. *Zook,* 188 A.2d at 784 (choosing to pursue edu-

cation rather than continued employment is not a necessitous and compelling reason to terminate employment).

**1.** Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(b).

necessitous and compelling nature to voluntarily quit a non-temporary position." (Majority Opinion at 1058). Because I do not believe the temporary nature of Claimant's new employment is dispositive, I respectfully dissent.

Claimant initially worked full-time for Employer as a marketing coordinator. Claimant was enrolled in an on-line educational program and wished to have greater flexibility in his work schedule in order to more effectively pursue his education. Claimant approached Employer in an effort to reclassify his position and reduce his hours to 30 hours per week in order to accommodate his schooling. Employer refused to do so, and Claimant then turned in his resignation and began a new job with Staffing Agency. The Board found that while Claimant's employment with Staffing Agency was full-time, it was only temporary employment with assignments lasting between one to six months. The Board also found that after one assignment with Staffing Agency was completed, it could be followed by another full-time assignment. Claimant expected his initial assignment with Staffing Agency to last at least six months and claims he was told that it would be a long-term contract position; however, Claimant was laid off after approximately one month due to lack of work. After being laid off from this temporary position, Claimant filed for unemployment compensation benefits.

The majority tends to focus on the fact that Claimant's employment with Staffing Agency was temporary in nature and, therefore, Claimant did not have good cause to quit his job with Employer. However, just because a job is temporary does not mean that a claimant is not entitled to unemployment compensation. According to the Law, a claimant is eligible for unemployment compensation benefits provided he "earned no less than $50 for at least 16 weeks during the five calendar quarters preceding the first day of the claimant's unemployment." *Earnest v. Unemployment Compensation Board of Review*, 30 A.3d 1249, 1254 (Pa.Cmwlth. 2011) (citing Section 404(c) of the Law, 43 P.S. § 804(c)). This financial eligibility provision does not distinguish between permanent and temporary employment. I do not believe that an employee becomes ineligible for unemployment compensation simply because he leaves full-time employment for other work as employees are free to change jobs in order to, *inter alia*, reduce the total number of hours worked or change shifts. *See Baldwin–Whitehall School District v. Unemployment Compensation Board of Review*, 848 A.2d 1021 (Pa.Cmwlth.2004). The permanent or temporary nature of the employment does not change the fact that Claimant was laid off through no fault of his own. Given the fact that employment is typically "at will," Claimant's situation is no different than if he had accepted a "permanent" position with another employer but was laid off after only one month due to lack of work.

Because I do not believe the temporary nature of Claimant's employment with Staffing Agency is dispositive, I would affirm the Board's determination that Claimant had cause of a necessitous and compelling nature for leaving his employment. The appropriate remedy in this case would be for Employer to file a notice for relief from charges pursuant to Section 302 of the Law, 43 P.S. § 782(a)(2). Given these reasons, I respectfully dissent.