IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Milagros Illas-Lockhart,        :
              Petitioner    :
                      :
        v.             :
                      :
Unemployment Compensation  :
Board of Review,         :  No. 1051 C.D. 2018
             Respondent  :  Submitted: December 28, 2018

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON        FILED: June 14, 2019

        Milagros Illas-Lockhart (Claimant) petitions this Court for review of the June 18, 2018 order of the Unemployment Compensation Board of Review (Board), affirming the referee's conclusion that Claimant was ineligible for unemployment compensation benefits under Section 402(b) of the Unemployment Compensation Law (Law).[1] Upon review, we affirm.

        Claimant began as a full-time employee with Wells Fargo (Employer) in March 2010. Referee's Finding of Fact (F.F.) 1. Claimant worked as a merchant consultant with a base annual pay of $40,000 plus commission. F.F. 2; Certified

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

Record (C.R.) Item No. 8, Transcript of Testimony (T.T.) at 7. Claimant subsequently accepted another position with Employer as a home mortgage consultant with a "draw over commission" pay structure. F.F. 3 & 4; T.T. at 3. Pursuant to this pay structure, Claimant was guaranteed $12 per hour for 40 hours per week. F.F. 4. Claimant could also potentially receive an "overdraw" payment consisting of the amount by which her total earnings on commission exceeded her guaranteed pay. *Id.* If Claimant's earnings from commissions totaled less than her guaranteed pay, Claimant would then owe this amount to Employer in arrears. T.T. at 14. Claimant was aware of these terms and conditions prior to accepting the position. F.F. 5. Sometime around December 2017, Claimant began to receive write-ups for her lack of production and became worried that she would be terminated. F.F. 6. Claimant felt it was difficult to establish new customers due to negative news coverage regarding Employer's business practices. F.F. 7. Claimant applied unsuccessfully for other positions with Employer. F.F. 8. Claimant submitted her resignation to Employer on February 16, 2018, effective March 2, 2018. F.F. 9. Claimant advised Employer she was resigning due to the financial hardship. *Id.* Employer permitted Claimant to separate from employment on February 16, 2018, but paid her through her effective resignation date of March 2, 2018. *Id.*

The Department of Labor and Industry's Erie Unemployment Compensation Service Center (Department) denied Claimant unemployment compensation benefits under Section 402(b) of the Law, finding that Claimant did not have necessitous and compelling reason to leave her employment and that she failed to exhaust all alternatives prior to voluntarily quitting her job. C.R. Item No. 4, Department's Determination at 1. Claimant appealed to a referee, who conducted

a hearing in which Claimant and two representatives for Employer participated. T.T. at 1. The referee affirmed the Department's denial of benefits under Section 402(b), concluding that Claimant did not have necessitous and compelling cause to separate from her employment. Referee's Decision & Order at 3. The Referee found that "[C]laimant accepted the new position with the knowledge of [E]mployer's pay structure within that position," and that she "accepted an inherent risk when taking the commission-based position." *Id.* The Referee further determined that "[C]laimant has not shown that the position changed in any way from when she initially accepted the position." *Id.* The referee found that "[C]laimant has failed to show a financial hardship that caused her to leave the position, as her resignation would seem to result in leaving her without any funds." *Id.* The referee also determined that Claimant failed to act with ordinary common sense and did not make a good faith effort to preserve her employment. *Id.* On June 18, 2018, the Board affirmed the referee's decision, adopting and incorporating the Referee's findings and conclusions. Board's Order at 1. Claimant petitioned this Court for review.[2]

Before this Court, Claimant argues that Section 402(b) of the Law does not preclude her eligibility for benefits, because unanticipated circumstances affected her earning potential. Claimant's Brief at 6. Claimant contends that the "Wells Fargo scandal . . . drastically reduced the amount of leads," and also that she lost her "internet leads" when her manager was removed. *Id.* Claimant avers that more loans were being declined, causing realtors with whom she had built

---

[2] "The Court's review is limited to determining whether constitutional rights were violated, whether an error of law was committed, whether a practice or procedure of the Board was not followed or whether the findings of fact are supported by substantial evidence in the record." *W. & S. Life Ins. Co. v. Unemployment Comp. Bd. of Review*, 913 A.2d 331, 334 n.2 (Pa. Cmwlth. 1991); *see also* Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

relationships to procure loans elsewhere. *Id.* Further, Claimant asserts that she had necessitous and compelling cause to quit. *Id.* Claimant admits that she agreed to the terms of her compensation, but maintains that she accepted the position under the impression that she would earn at least $70,000 per year and possibly more the following years, as "[]that is what people were making at that office." *Id.* Claimant states that her income was insufficient to cover her monthly expenses. *Id.* at 7. Claimant further contends that she acted with "ordinary common sense" in quitting her employment and asserts that she acted as any ordinary person would have in the circumstances, as evidenced by the fact that 9 of 12 loan officers also left their positions. *Id.* at 8. Claimant contends that she made a reasonable effort to maintain her employment, noting that she applied for other positions with Employer, but that her applications were withdrawn without her consent. *Id.* at 8. Claimant also avers that she "did everything in [her] power to succeed within [her] position," such as reaching out to realtors, attending open houses and translating for some realtors in order to get their business. *Id.* Claimant further contends that Employer did not attempt to accommodate her and that, upon submitting her resignation, her manager told her that resigning was the best thing for her to do. *Id.* at 9.

"A claimant who voluntarily terminates [her] employment has the burden of proving that a necessitous and compelling cause existed." *Solar Innovations, Inc. v. Unemployment Comp. Bd. of Review*, 38 A.3d 1051, 1056 (Pa. Cmwlth. 2012); *see also* Section 402(b) of the Law, 43 P.S. § 802(b). Employees who claim to have left their employ for a necessitous and compelling reason must prove:

> (1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in

4

the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a reasonable effort to preserve her employment.

*Brunswick Hotel & Conference Ctr., LLC v. Unemployment Comp. Bd. of Review*, 906 A.2d 657, 660 (Pa. Cmwlth. 2006). "In essence, a claimant who willingly resigns from [her] job must show that [s]he had no real choice but to leave." *Stiffler v. Unemployment Comp. Bd. of Review*, 438 A.2d 1058, 1060 (Pa. Cmwlth. 1982). "Whether a claimant had cause of a necessitous and compelling nature to quit a job is a conclusion of law subject to review by this Court." *Warwick v. Unemployment Comp. Bd. of Review*, 700 A.2d 594, 596 (Pa. Cmwlth. 1997).

It is well established that mere dissatisfaction with wages does not constitute necessitous and compelling cause to voluntarily quit employment. *Stiffler*, 438 A.2d at 1060; *see also World's Finest Chocolate, Inc. v. Unemployment Comp. Bd. of Review*, 616 A.2d 1114, 1116-18 (Pa. Cmwlth. 1992) (applying this principle to cases involving claimants who had been paid on a commission basis). In accepting the terms of employment, a claimant concedes their suitability, such that she can no longer claim that dissatisfaction with those terms constitutes necessitous and compelling cause to quit employment. *See Miller v. Unemployment Comp. Bd. of Review*, 580 A.2d 920, 921 (Pa. Cmwlth. 1990). A claimant may rebut this presumption of suitability by arguing that she was deceived as to, or was reasonably unaware of, the unsuitable terms or conditions when she accepted the employment, or that a substantial unilateral change in the employment agreement occurred after acceptance. *See id.* at 922.

We agree with the Board that Claimant lacked necessitous and compelling cause to voluntarily quit her employment and is, therefore, ineligible for unemployment compensation benefits under Section 402(b) of the Law. Here,

5

Claimant accepted the terms of the "draw over commission" pay structure, thereby conceding their suitability. *See Miller*, 580 A.2d at 921. Nonetheless, Claimant contends that she accepted the terms of her pay structure under the impression that she would have the opportunity to increase her earnings, and the unanticipated decrease in her expected earnings on commission following Employer's negative publicity provided her with necessitous and compelling cause to quit. However, Claimant may not surmount the presumption of suitability that arose upon acceptance of the terms of her employment by asserting that a subsequent downturn in business constituted necessitous and compelling cause as it lessened the attractiveness of the agreed-upon pay structure. Rather, as indicated above, Claimant must establish that she was deceived as to, or was reasonably unaware of, the unsuitable *terms or conditions* when she accepted the employment, or that a substantial unilateral *change in the employment agreement* occurred after acceptance. *See id.* at 922. Claimant has failed to do so. *See Krantz v. Unemployment Comp. Bd. of Review* (Pa. Cmwlth., No. 2300 C.D. 2009, filed Sept. 9, 2010), slip op. at 14[3] (noting that a claimant failed to establish that his reduction in commission-based pay was substantial, unreasonable, or a result of an employer's unilateral actions when it resulted from "general economic downturn and the subsequent reduction in [] sales"). While the circumstances of the business environment may have changed, the terms or conditions of her employment agreement did not. Moreover, Claimant assumed the risk of unpredictable earnings upon agreeing to the terms of the "draw over commission" payment structure. *See Hrinda v. Unemployment Comp. Bd. of Review* (Pa. Cmwlth., No. 1475 C.D. 2011, filed Apr. 16, 2013), slip op. at 8 (finding that "[c]ommissions by their nature can

---

[3] While this Court's unreported memorandum opinions may not be cited as binding precedent, they may be cited for persuasive value. 210 Pa. Code § 69.414.

go up as well as go down, and an employee who accepts a commissioned position accepts that risk," such that "a claimant's dissatisfaction with his rate of pay is not a necessitous and compelling reason to quit"); *see also Krantz*, slip op. at 14 (noting that an "[e]mployer has little or no control over [earnings based on commissions] beyond setting [a] [c]laimant's commission structure"). Thus, Claimant's mere dissatisfaction with her wages following the failure of her expectation to come to fruition did not provide her with necessitous and compelling cause to quit her employment. *See Stiffler*, 438 A.2d at 1060; *see also Miller*, 580 A.2d at 922 (holding that where claimant accepted a position with the expectation that she would soon be able to move to a better position with higher pay, but had not communicated this expectation to employer prior to accepting the position and such a transfer was not a part of the employment agreement, claimant did not have necessitous and compelling cause to terminate her employment). Thus, the Board did not err in concluding that Claimant failed to meet her burden to establish that necessitous and compelling cause prompted her to leave her employment. [4]

Accordingly, for the foregoing reasons, we affirm the Board's decision and order.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[4] Because of our disposition, we need not address Claimant's remaining arguments. *See Hrinda*, slip op. at 8 (reasoning that, in light of our conclusion that the claimant's dissatisfaction with his commission-based pay did not constitute necessitous and compelling cause to quit, the claimant's additional contention that he took steps to preserve his employment had no application to the case).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Milagros Illas-Lockhart,        :
            Petitioner    :
                        :
      v.                 :
                        :
Unemployment Compensation    :
Board of Review,          :    No. 1051 C.D. 2018
            Respondent   :

## O R D E R

AND NOW, this 14th day of June, 2019, the June 18, 2018 order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge