IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Devon Preparatory School,  :
                                 :
                Petitioner   :
                                 :
             v.            :  No. 1298 C.D. 2018
                                 :  Submitted:  April 5, 2019
Unemployment Compensation   :
Board of Review,              :
                                 :
                Respondent :

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK               FILED:  July 15, 2019

Devon Preparatory School (Employer) petitions for review from a final order of the Unemployment Compensation Board of Review (Board), which reversed a decision of a referee and held that Monica M. Real (Claimant) was not ineligible for unemployment compensation (UC) benefits under Section 402(b) of the Unemployment Compensation Law (Law).[1]  We affirm.

Claimant worked for Employer as a full-time administrative assistant from August 6, 2005, until her last day of work on August 30, 2017.  On August 29,

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b).  Section 402(b) of the Law provides that an employee shall be ineligible for compensation for any week "[i]n which [her] unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature ...."  43 P.S. §802(b).  *Middletown Township v. Unemployment Compensation Board of Review*, 40 A.3d 217, 227 (Pa. Cmwlth. 2012); *Key v. Unemployment Compensation Board of Review*, 687 A.2d 409, 412 (Pa. Cmwlth. 1996).

2017, Jennifer Gregory, Employer's director of operations (Ms. Gregory) notified Claimant that Employer would be changing her employee status to that of an hourly employee, reducing her paid vacation, eliminating paid holidays and personal days, and increasing her job duties. On August 30, 2017, Claimant submitted a letter of resignation effective that same day. The local service center denied Claimant's application for UC benefits, and Claimant appealed.

A referee held a hearing on November 9, 2017, at which Claimant and Employer participated with counsel. Claimant testified that she began working for Employer in August 2005. She stated that in 2017, her annual salary was $35,500, and she was entitled to 5 weeks paid vacation, 27 paid holidays, and 10 personal days. Claimant explained her reasons for leaving her employment. She said that on August 29, 2017, she met with Ms. Gregory, director of operations. She said Ms. Gregory began the meeting by stating, "This is how it's going to go for you." Reproduced Record (R.R.) at 43. Ms. Gregory told Claimant that her employment status was being changed from salaried to hourly, and she would be paid only for hours she actually worked. Additionally, her vacation time was being reduced to 2 weeks paid and 2 weeks unpaid time off. Ms. Gregory informed Claimant that she would have to work during the summer and on holidays when the school was open for athletic events.

Ms. Gregory also advised Claimant that she would be given additional duties, including the job of registrar, attendance helper, and athletic liason. Claimant testified that she did not know how to be a registrar or help with attendance using Employer's new computer system. She explained that she could not consult her coworkers because the employees who previously performed those duties no longer worked for Employer. R.R. at 49. Claimant said she was particularly disturbed by

2

instructions to observe and report on the athletic director and assistant athletic director; Claimant was appalled that she was being asked to spy on her fellow employees. R.R. at 49-50.

Claimant testified that Mr. Mark Aquilante, Employer's director of administrative affairs, called a meeting with all eight employees the following day to explain Employer's new policy. She said Mr. Aquilante told the staff that everyone, regardless of their length of service, would fall under the new change of employment status and vacation/time off policy.

Claimant stated that all employees were to attend individual meetings the next day to discuss their hourly compensation rate. She said that when Ms. Gregory contacted her, Claimant declined to schedule another meeting and asked Ms. Gregory to tell her what her hourly rate would be. Ms. Gregory refused and told Claimant she would have to come to the meeting. Claimant instead submitted a letter of resignation to Father Aisa, Employer's headmaster, and Mr. Aquilante, R.R. at 17-18, effective that same day. In the letter, Claimant emphasized that having the month of July off was an important condition of her agreement of hire that had been upheld for 13 years. She stated that she was dismayed at the school's decision to open on holidays and that losing paid holidays was equivalent to a pay cut. Claimant also said that the new administration, of which Ms. Gregory was a part, had created a hostile work environment. *Id.*

Claimant explained that she did not discuss her objections regarding the changes to her position with Ms. Gregory or her supervisors because in the past, Ms. Gregory never allowed her to ask questions; instead, Ms. Gregory would say that issues were not open to discussion and that Claimant should do what she was told. R.R. at 50. Claimant added that she could not discuss her concerns with Employer's

3

human resources department because Ms. Gregory, the director of operations, was also in charge of human resources. R.R. at 55, 60.

Claimant said she did not believe that Father Aisa or Mr. Aquilante would be any more willing than Ms. Gregory to address Claimant's concerns. Claimant testified that Mr. Aquilante had asked Claimant "to do something that I personally felt was inappropriate, to spy on other members of the office." R.R. at 55. Additionally, Ms. Gregory had told Claimant that Father Aisa made comments to the effect that he did not like what he saw in Claimant and criticized her relationship with a coworker. R.R. at 55. During cross-examination, Claimant repeated that she saw no point in having further discussion with Ms. Gregory and she was too uncomfortable to speak again to either Mr. Aquilante or Father Aisa, where the former had asked her to do something she felt was unethical and the latter had criticized her, albeit indirectly.

Ms. Gregory testified that during her brief meeting with Claimant on August 29, 2017, she told Claimant that she was a valued employee and informed Claimant in advance that there would be a group meeting the next day to discuss some administrative changes. R.R. at 56. Ms. Gregory confirmed that all employees were advised at the meeting that their status would be changed from salaried to hourly employee, a change that would affect both their pay and vacation time. She testified that hourly rates were to be discussed with employees during individual meetings, but Claimant did not attend an individual meeting or otherwise raise concerns to her.

The referee found that while Employer's changes might have provided good cause to leave her employment, Claimant did not discuss her concerns with Employer before quitting her employment. The referee determined that Claimant

4

had not made a reasonable attempt to maintain her employment and was ineligible for benefits under Section 402(b) of the Law.

Claimant appealed to the Board, which reversed.[2] The Board found, *inter alia*, that at the time of Employer's announced changes, Claimant was entitled to 5 weeks of paid vacation, 27 paid holidays, and 10 paid personal days. Ms. Gregory informed Claimant that her vacation benefit would be reduced to 2 weeks of paid vacation and 2 weeks of unpaid vacation. Additionally, Ms. Gregory told Claimant that she would be required to work holidays and to take up the additional duties of registrar, athletic liaison, and attendance helper. The Board found that Claimant declined to go to an individual meeting with Ms. Gregory on September 1, 2017. Instead, on August 30, 2017, Claimant submitted a letter of resignation, effective that day. Board's Findings of Fact, Nos. 5, 6, 8, 10, 12.

The Board also found that Claimant did not discuss her concerns regarding the new pay structure or the changes being made to her time off with Ms. Gregory or any of the director's supervisors prior to quitting. However, the Board noted that Claimant set forth her reasons, including the loss of vacation during the month of July, in her letter of resignation. Board's Findings of Fact, Nos. 10, 11, 12.

The Board concluded that the change to Claimant's employment status, the significant reduction in her paid vacation time and other time off, and the assignment of additional duties represented a substantial unilateral change in the terms and conditions of Claimant's employment that provided Claimant necessitous and compelling reason for leaving her employment. The Board acknowledged that

---

[2] In UC cases, the Board is the ultimate finder of fact and questions regarding the weight of evidence and witness credibility are solely within its province. *Morgan v. Unemployment Compensation Board of Review*, 108 A.3d 181, 188 (Pa. Cmwlth. 2015).

Claimant did not discuss her concerns with Employer, but concluded that doing so would have been futile. Board's decision at 3. Thus, the Board held that Claimant is not ineligible for UC benefits under Section 402(b) of the Law.

Employer then petitioned this Court for review.[3] Employer contends that the Board erred in finding a substantial and unilateral change in the terms and conditions of Claimant's employment. Employer also maintains that Claimant did not act with common sense or make a reasonable effort to preserve her employment before she voluntarily quit.

In order to prove a necessitous and compelling reason for leaving employment, a claimant must demonstrate that: (1) circumstances existed that produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a reasonable effort to preserve her employment. *Solar Innovations, Inc. v. Unemployment Compensation Board of Review*, 38 A.3d 1051, 1056 (Pa. Cmwlth. 2012); *Brunswick Hotel & Conference Center, LLC v. Unemployment Compensation Board of Review*, 906 A.2d 657, 660 (Pa. Cmwlth. 2006).

An employer's substantial and unilateral change in the terms and conditions of employment provides necessitous and compelling reason for an employee to quit. *McCarthy v. Unemployment Compensation Board of Review*, 829 A.2d 1266, 1271, n.5 (Pa. Cmwlth. 2003). The substantiality of the unilateral change

---

[3] Our scope of review is limited to determining whether necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated. *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth.), *appeal denied*, 97 A.3d 746 (Pa. 2014).

6

is measured by the impact on the employee and whether the change involves any real difference in the employment conditions. *Id.* at 1271.

When the claimant in *McCarthy* began working for the employer, its benefits policy provided that employees could have continued health insurance coverage after retirement if they worked for employer for 15 years and reached age 55. The employer subsequently changed its policy to require all employees to reach age 65 in order to be eligible for health care benefits upon retirement. The employer offered employees who had reached age 55 with 15 years of service the option to retire by a certain date and still retain eligibility for the post-retirement health insurance coverage. The claimant was 60 years old with 18 years of work credit at the time, and she left her employment in order to preserve her retirement health care benefits. The referee denied benefits under Section 402(b) of the Law, and the Board affirmed.

On appeal, this Court reversed. We explained that the claimant's health care benefits were part of the employer's existing policy when the claimant began her employment. We concluded that the loss of a vested right to health insurance was a substantial change to the current terms and conditions of her employment, constituting a necessitous and compelling reason to leave work. *McCarthy*, 829 A.2d at 1272.

A work schedule change implemented by the employer also can establish a unilateral change in employment terms providing necessitous and compelling cause for an employee to terminate his employment. *Mauro v. Unemployment Compensation Board of Review*, 751 A.2d 276, 279 (Pa. Cmwlth. 2000). In *Mauro*, the claimant, made clear at the time of hire that his work hours needed to coincide with his daughter's day care schedule. The employer initially

7

obliged, but later changed the claimant's work schedule to require him to work longer hours. The claimant asked the employer if there was something that could be worked out with respect to his daughter's day care schedule. The employer responded "you got to do what you got to do." *Mauro*, 751 A.2d at 279. Thereafter, the claimant voluntarily left his employment. The Board held that the claimant was ineligible for benefits under Section 402(b) because he did not make a reasonable effort to preserve his employment. On appeal, this Court reversed, holding that after the employer responded as it did, it would have been futile for the claimant to pursue the matter by again proposing hours that would coincide with his daughter's day care schedule. *Mauro*, 751 A.2d at 279.

Employer argues that the Board erred in finding that it made substantial changes to the terms and conditions of Claimant's employment. Employer asserts on appeal that it would have compensated Claimant for the increase in her duties and change of status. However, the Board made no finding to that effect, and Employer neither elaborates nor cites any evidence that it made this representation to Claimant or any other employees during meetings on August 29 and 30, 2017. Further, Employer does not address the significant reductions to Claimant's vacation time, an important condition of her employment for 13 years. Based on this record, the Board properly concluded that Employer made substantial and unilateral changes to Claimant's working conditions that provided a necessitous and compelling reason to leave her employment. *Brunswick Hotel*; *McCarthy*; *Mauro*.

Employer also argues that Claimant is ineligible for benefits because she failed to make a reasonable effort to preserve her employment by declining to attend an individual meeting with Ms. Gregory. A claimant who voluntarily leaves her employment must show that she acted with ordinary common sense and made a

8

reasonable effort to preserve her employment. *Brunswick Hotel*, 906 A.2d at 660. Common sense and reasonable effort includes informing a supervisor or other management of dissatisfaction. *Moskovitz v. Unemployment Compensation Board of Review*, 635 A.2d 723, 724 (Pa. Cmwlth. 1993). However, an employee may be excused from bringing her concerns to the employer if the employee reasonably believes that doing so would have been futile. *Martin v. Unemployment Compensation Board of Review*, 749 A.2d 541, 544 (Pa. Cmwlth. 2000).

Claimant testified that at the general meeting on August 30, 2017, all staff were informed that no matter how long they had worked for Employer, the changes to employment status and vacation time would apply to them. R.R. at 44. Claimant stated that when Ms. Gregory called her for yet another meeting on September 1, 2017, Claimant stated "[w]e've already had two meetings. . . . I know what the -- everything is. Could you please give me my hourly rate?" R.R. at 47. Claimant stated that Ms. Gregory refused to give her that information and instead told Claimant she would have to attend another meeting to learn her hourly rate. R.R. at 47, 57.

The Board did not address Claimant's testimony that she saw no point in further conversation with Ms. Gregory and that she was too uncomfortable to talk to Father Aisa or Mr. Aquilante. Instead, the Board determined that in light of Employer's announcement that the new terms of employment would be imposed upon all employees, it would have been futile for Claimant to voice her concerns. An employee may be excused from bringing her concerns to the employer if the employee reasonably believes that reporting would have been futile. *Martin.*

Upon review, we conclude that the record supports the Board's findings and conclusions. Based on Employer's substantial and unilateral changes to the

terms of Claimant's employment, the Board properly found that Claimant had a necessitous and compelling reason for leaving her employment and was not ineligible for UC benefits pursuant to Section 402(b) of the Law.

Accordingly, we affirm.

MICHAEL H. WOJCIK, Judge

Judge Brobson dissents and wishes to be so noted.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Devon Preparatory School, :
 :
     Petitioner :
 :
     v. : No. 1298 C.D. 2018
 :
Unemployment Compensation :
Board of Review, :
 :
     Respondent :

O R D E R

   AND NOW, this 15th day of July, 2019, the order of the Unemployment Compensation Board of Review, dated August 23, 2018 is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge