IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lee S. Krause,                          :
                    Petitioner          :
                                        :
        v.                              :   No. 1283 C.D. 2018
                                        :   SUBMITTED: September 9, 2019
Unemployment Compensation Board         :
of Review,                              :
                    Respondent          :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE ELLEN CEISLER, Judge
            HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                FILED:  October 3, 2019

        Lee S. Krause (Claimant) petitions for review of the August 23, 2018 Order
of the Unemployment Compensation Board of Review (Board) affirming the
decision of a Referee to deny Claimant unemployment compensation (UC) benefits.
The Board concluded that Claimant was ineligible for UC benefits because he
voluntarily quit his employment without cause of a necessitous and compelling
nature under Section 402(b) of the Unemployment Compensation Law (Law).[1]  We
affirm the Board's Order.

## Background

        Claimant worked for Wallenpaupack Property Owners Association
(Employer) as a full-time water and sewer technician from June 12, 2017 through

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §
802(b).  Section 402(b) of the Law provides that an employee shall be ineligible for UC benefits
for any week "[i]n which his unemployment is due to voluntarily leaving work without cause of a
necessitous and compelling nature."  43 P.S. § 802(b).

January 19, 2018. Bd.'s Finding of Fact (F.F.) No. 1. Claimant's primary job duties were to maintain Employer's water and sewer systems and to test Employer's wells for chlorine leaks. *Id.* No. 3.

On June 12, 2017, Employer hired Claimant at a pay rate of $14.50 per hour. *Id.* No. 4. At the time of his hiring, Claimant informed Employer that eventually he wanted to become a licensed water and sewer treatment operator, which would result in a pay increase. *Id.* No. 5.

On September 12, 2017, Employer's General Manager, John Carney, conducted a 90-day review of Claimant's performance and increased Claimant's pay to $15.00 per hour. *Id.* No. 6. During the 90-day review meeting, Claimant informed Mr. Carney that, should Claimant complete the necessary educational requirements and become a licensed treatment operator, he expected to receive a pay increase to $25.00 per hour. *Id.* No. 7. Mr. Carney told Claimant that he did not believe Employer would be able to meet Claimant's salary requirement should he become a licensed treatment operator. *Id.* No. 8. After this meeting, Claimant continued to work for Employer for four more months. *Id.* No. 9.

In January 2018, Claimant provided verbal notice of his resignation to Employer's Director of Water and Sewer Services, Brian Schan, stating that he would resign from his position in March 2018. *Id.* No. 10; Notes of Testimony (N.T.), 6/4/18, at 11, 20, 24. However, Claimant's resignation became effective on January 19, 2018 because he wanted to pursue a business opportunity in self-employment. Bd.'s F.F. No. 11. Specifically, Claimant was in negotiations to purchase a pizza restaurant and its associated real estate. N.T., 6/4/18, at 11-13.

After Claimant resigned, his potential business opportunity in self-employment did not materialize. Bd.'s F.F. No. 12. Although Claimant testified that he had received "a standing offer" from New Era Security, N.T., 6/4/18, at 13,

2

Claimant did not have a definite offer of employment from another employer at the time of his resignation, Bd.'s F.F. No. 13.

Employer had continuing work available for Claimant had he not resigned. Bd.'s F.F. No. 14. Claimant has not worked in covered employment or self-employment since his separation from Employer on January 19, 2018. *Id.* No. 15.

Claimant filed a claim for UC benefits, which the local UC Service Center denied. The Service Center found that because Claimant did not have a definite job offer from another employer before voluntarily quitting his employment, he did not establish a necessitous and compelling reason to quit under Section 402(b) of the Law. Record (R.) Item No. 5.

Claimant timely appealed to the Referee. The Referee held an evidentiary hearing on June 4, 2018, at which Claimant, Mr. Carney, and Mr. Schan testified. Following the hearing, the Referee affirmed the Service Center's decision, finding:

> [C]laimant testified that he resigned his employment due to [E]mployer migrating [sic] to [C]laimant's salary expectations [if he were to become] a licensed sewer/water treatment operator. Although [Mr. Carney] informed [C]laimant [in] September 2017 that [E]mployer would not be able to meet [his] salary expectations, [C]laimant continued to work for [E]mployer.
>
> Subsequently, [C]laimant alleged that he entered negotiations to purchase a pizza business and numerous properties prior to [his] resignation and [he] decided to resign in order to pursue possible self-employment. Furthermore, [C]laimant alleged that he had a standing offer from another employer, New [Era] Security, in Waymart, PA as a full-time technician at a rate of pay of $18.00 per hour. Due to [C]laimant's decision to pursue possible self-employment, [he] resigned his employment. After [C]laimant's resignation, [his] potential self-employment did not materialize and [he] did not commence employment with New [Era] Security.

. . . Although the [R]eferee finds [C]laimant's efforts to pursue self-employment [to be] laudable, nevertheless, [C]laimant's pursuit of self-employment [was] a personal choice. Furthermore, the [R]eferee does not find [C]laimant provided credible testimony that he had a definite offer of covered employment at the time he submitted his resignation to [E]mployer.

Ref.'s Order, 6/8/18, at 3. Therefore, the Referee concluded that Claimant did not establish a necessitous and compelling reason to voluntarily quit his employment. *Id.*

Claimant timely appealed to the Board, asserting that he "was offered pay raises commensurate with his employment performance and tuition for the on-going waste water treatment plant operator certification necessary to manage [Employer's] treatment plant" and that he "left [Employer] due to [Employer's] breach of its original job offer." R. Item No. 11.

The Board adopted the Referee's Findings of Fact and Conclusions of Law and concluded as follows:

The Board finds the testimony of [Mr. Carney] credible that he told [C]laimant that he did not believe [C]laimant would be given a raise to $25 per hour by [E]mployer. Furthermore, [C]laimant's other employment opportunities were not firm offers. As such, [C]laimant has failed to establish a necessitous and compelling reason to voluntarily quit his job.

Bd.'s Order, 8/23/18, at 1. Therefore, the Board affirmed the Referee's decision. Claimant now petitions this Court for review.[2]

---

[2] Our scope of review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

4

## Analysis

A claimant who voluntarily terminates his employment has the burden to establish a necessitous and compelling reason for doing so. *Petrill v. Unemployment Comp. Bd. of Review*, 883 A.2d 714, 716 (Pa. Cmwlth. 2005). The claimant must prove that: (1) circumstances existed that produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a reasonable effort to preserve his employment. *Brunswick Hotel & Conference Ctr., LLC v. Unemployment Comp. Bd. of Review*, 906 A.2d 657, 660 (Pa. Cmwlth. 2006).

A claimant's initial acceptance of a job presumes its suitability. *Spinelli v. Unemployment Comp. Bd. of Review*, 437 A.2d 1320, 1321 (Pa. Cmwlth. 1981). Once a claimant accepts a job as suitable and then subsequently quits, the claimant must show a substantial, unilateral change in the employment agreement, the existence of conditions of which he was unaware when he accepted the position, or that he was deceived as to the conditions of his employment in order to establish necessitous and compelling cause to quit. *Id.* at 1321-22.

In his Petition for Review, Claimant contends that he was compelled to quit his employment "due to [Employer's] breach of the job-related performance raises and promotions promised" to Claimant when he was hired. Pet. for Review, 9/18/18, at 2. Specifically, he claims that Employer promised him that he would "escalate up in rapid fashion" if he worked toward obtaining his operator's license but then "pulled the rug out from underneath [Claimant]" by "reneg[ing] its original proposal." Claimant's Br. at 10-11. In essence, Claimant asserts that Employer deceived him with regard to the terms and conditions of his employment and, thus, he had a necessitous and compelling reason to voluntarily quit. We disagree.

At the hearing, Claimant testified that one month before he was hired, he and Mr. Carney had discussed wages. N.T., 6/4/18, at 7. Claimant testified that when Mr. Carney asked him what he was seeking in terms of pay, Claimant "did not give him a definite answer." *Id.* According to Claimant, Mr. Carney told him at that time that if he were seeking wages in excess of $20.00 per hour, "it wouldn't be worth [Claimant's] time or [Employer's] time," and they subsequently discussed wages in the $16- to $18-per-hour range. *Id.* at 8. When Mr. Carney later offered Claimant the technician position at $14.50 per hour, Claimant said he could not work for $14.50 per hour and needed time to consider the offer. *Id.* Claimant testified that Mr. Carney told Claimant that he "would only have to do the $14.50 for 90 days" and that "if [Claimant] work[ed] on getting [his] certifications and [his] schooling that [he] can escalate up to where [he] want[ed] to be rapidly." *Id.*

Mr. Carney testified that he "offered [Claimant] the job of working [as a] water and sewer [technician] and eventually becoming a licensed operator." *Id.* at 17. With regard to salary, Mr. Carney testified that he and Claimant had discussed a pay rate of $14.50 per hour, with an increase to $15.00 per hour after a 90-day probationary period. *Id.* at 18. He testified that Claimant said he would "come in for $15.00 an hour, and work toward[] a goal before any increase." *Id.* Mr. Carney replied that his original offer stood and again offered him the position at $14.50 per hour, with an increase to $15.00 per hour after 90 days. *Id.* at 18, 21. After Claimant accepted the position, Mr. Carney spoke with Mr. Schan, Employer's Director of Water and Sewer Services, about setting up a class schedule for Claimant. *Id.* at 18.

Mr. Carney further testified that on September 12, 2017, he met with Claimant to conduct his 90-day review, during which he offered Claimant a pay increase to $15.00 per hour. *Id.* Claimant told Mr. Carney that he wanted to move forward with obtaining his license and that "within two years [he was] looking to be [earning] in

the mid-20s, such as . . . $25 an hour." *Id.* Mr. Carney informed Claimant that Employer would not be able to meet that demand. *Id.* at 18-20; Bd.'s F.F. Nos. 8, 9. Mr. Carney explained Employer's reason as follows:

> In two years, mid-20s, I knew that wasn't going to work. [I]n sewer and water [w]e have an operator -- two operators there. They've been -- in fact, they were there ten years and five years, making less than $18 [per hour]. And both of these guys have much more experience than [Claimant] did at that time and probably in the next two years would have as much or more experience. . . . I have an immediate supervisor [earning] less than $25 [per] hour. [Claimant's] position fell more in line with our compliance officer, who's just above $18 [per] hour. A machine operator [earns] $16 [per] hour. A lieutenant sergeant in our security force, . . . [earns] from $17 to $18.50 [per] hour. I fe[lt] in the two years that would be my goal [--] to get [Claimant] up and around that $18 [per] hour . . . .

N.T., 6/4/18, at 19.

Based on the evidence presented at the hearing, the Board expressly rejected Claimant's assertion that he had a necessitous and compelling reason to quit because "[E]mployer failed to offer him promised wage increases." Bd.'s Order, 8/23/18, at 1. Claimant himself testified that, during their initial wage discussions, Mr. Carney told Claimant that Employer could not pay him more than $20 per hour, even if he were to obtain his operator's license. N.T., 6/4/18, at 8. Mr. Carney also testified that he never promised Claimant "mid-20s" and reiterated that Employer could not meet that demand during the 90-day review meeting. *Id.* at 18, 20; Bd.'s F.F. Nos. 8, 9.[3]

Moreover, although Claimant was purportedly dissatisfied with the pay rate offered at the September 12, 2017 meeting, *see* N.T., 6/4/18, at 14, the Board found

_____

[3] Although Mr. Carney could not recall his exact response to Claimant's $25-per-hour wage demand, Mr. Carney stated, "I know there was discussion of how I felt about the mid-twenties." N.T., 6/4/18, at 20.

that he continued to work for Employer for four more months before resigning. Bd.'s F.F. Nos. 8, 9, 11. Our Court has explained:

> *[O]nce an employee [has] accepted new terms of employment, it is presumed that the employment is suitable; therefore, the employee may not later assert that dissatisfaction with those terms constitutes a necessitous and compelling reason [for voluntarily quitting]*, unless there has been a change in the employment conditions or the employee was deceived by the employer or the employee was reasonably unaware of the unsuitable conditions when he accepted the position.

*Speck v. Unemployment Comp. Bd. of Review*, 680 A.2d 27, 30 (Pa. Cmwlth. 1996) (emphasis added); *see also Monaco v. Unemployment Comp. Bd. of Review*, 565 A.2d 127, 130 (Pa. 1989) ("Mere dissatisfaction with wages or working conditions is not sufficient to establish necessary and compelling reasons to quit [one's] employment."). We agree with the Board that Claimant's alleged dissatisfaction with his pay was not a necessitous and compelling reason for voluntarily quitting.

Finally, the Board determined that Claimant voluntarily quit on January 19, 2018, rather than in March 2018 as he had originally discussed with Employer, in order to pursue self-employment. Bd.'s F.F. Nos. 10, 11. During his initial interview with the Department of Labor and Industry (Department), the Department representative asked Claimant, "What happened in January [2018] that caused you to decide to quit?" to which Claimant responded:

> I had been looking into possibly opening a pizza place in Carbondale and also had a friend who worked for Leeward Construction who was trying to get me . . . work. Neither opportunity worked out but I decided I needed to take more time to look into other work. I didn't have anything definite to go to. I just needed to dedicate more time to looking elsewhere.

R. Item No. 4. In addition, Claimant testified that, a few months before resigning, he had entered into negotiations to purchase a pizza business and numerous

8

properties and ultimately decided to quit in January 2018 "[t]o enter into self-employment." N.T., 6/4/18, at 11. As the Board found, however, that self-employment opportunity did not materialize. Bd.'s F.F. No. 12.

We conclude that the record contains substantial evidence to support the Board's finding that Claimant voluntarily quit his position with Employer to pursue a self-employment opportunity, which is not a necessitous and compelling reason under Section 402(b) of the Law. *See Solar Innovations, Inc. v. Unemployment Comp. Bd. of Review*, 38 A.3d 1051, 1057 (Pa. Cmwlth. 2012) (recognizing that while a claimant may have personal, economic, or career reasons for deciding to quit his or her employment, that does not constitute a necessitous and compelling cause); *O'Connor v. Unemployment Comp. Bd. of Review*, 413 A.2d 458, 460 (Pa. Cmwlth. 1980) ("The mere possibility of obtaining another job, without a firm offer of employment, is insufficient to constitute necessitous and compelling cause for terminat[ing one's employment] . . . .").[4]

### Conclusion

Accordingly, we affirm the Board's Order.

_____
ELLEN CEISLER, Judge

---

[4] Even though Claimant did not cite his alleged "standing offer" of employment from New Era Security as the reason for his voluntary quit, we agree with the Board that such offer also did not constitute necessitous and compelling cause. In determining whether a claimant had a necessitous and compelling reason to quit due to another job opportunity that does not ultimately come to fruition, this Court has held that "[t]he [claimant's] receipt and acceptance of a firm offer of employment . . . constitute[s] compelling cause for termination of employment." *Top Oil Co. v. Unemployment Comp. Bd. of Review*, 488 A.2d 1209, 1211 (Pa. Cmwlth. 1985). "The offer of employment, however, must be definite." *Solar Innovations*, 38 A.3d at 1056. Here, the Board determined that Claimant did not have a firm offer of employment from New Era Security or any other employer at the time of his resignation. Bd.'s F.F. No. 13.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lee S. Krause, :
                Petitioner :
                 :
      v. : No. 1283 C.D. 2018
                 :
Unemployment Compensation Board :
of Review, :
                Respondent :

# **O R D E R**

AND NOW, this 3rd day of October, 2019, the Order of the Unemployment Compensation Board of Review, dated August 23, 2018, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge